UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RALPH ARNOLD JACKSON, | § |
| Petitioner, | § § § |
| VS. | §  CIVIL ACTION NO. 4:11-CV-3659 |
| RICK THALER, | § § § |
| Defendant. | § § |

## OPINION ON DISMISSAL

Petitioner Ralph Arnold Jackson, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his theft conviction, for which he received an enhanced fifteen-year sentence. (Docket No. 1.) Respondent has filed a supplemental motion for summary judgment (Docket No. 20), to which Petitioner has filed a response (Docket No. 23). After considering all of the pleadings, the entire record, and the applicable law, the Court will grant Respondent's summary judgment motion and dismiss this habeas petition.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted on August 15, 2007, in the 177th Judicial District Court of Harris County, Texas, on the felony charge of "theft-third offender" in cause number 1129234. (Docket No. 8-8 at 8). Petitioner was appointed counsel and entered a plea of not guilty. On February 11, 2008, the State was granted leave to amend the indictment to change the enhancement paragraphs related to Petitioner's prior convictions; dropping a paragraph related to a prior theft conviction and adding an enhancement for assault with intent to rob. (Docket No. 8-8 at 17.) On

May 9, 2008, the day set for his trial, Petitioner waived his right to counsel and was allowed to proceed *pro se*. (Docket No. 8-8 at 58-59.) As summarized in the State's Appellate Brief, the jury heard evidence of the following at trial:

> On June 28, 2007, Sarah Stewart was running errands as she prepared to leave Houston for her freshman year of college in Kansas City, Missouri. (RR III 101–03). As Stewart left her bank, she was approached by a man who had a strong "African-type" accent. (RR III 103–04). The man handed her a piece of paper and asked if she was familiar with the address on the paper, which he described as an apartment building on Telephone Road. (RR III 105, 107–08). The man took a roll of money from his shirt pocket and offered Stewart around a thousand dollars to take him to the apartment. (RR III 106–08). He told Stewart the roll of money contained approximately $50,000. (RR III 106–07). Stewart agreed to take the man to the apartment complex, so he got into her car and they drove toward Telephone Road. (RR III 108–09).
>
> The man asked Stewart to stop somewhere so that he could use the restroom. (RR III 109). Stewart stopped at a gas station, and as she waited in the car, [Jackson] approached her and made conversation. (RR III 110–12). The man Stewart had picked up exited the gas station, told [Jackson] that he was looking for a place to stay, and again displayed the roll of money. (RR III 112–13). The men did not act like they knew each other. (RR III 112). [Jackson] told Stewart they should take the man to a bank so that he could deposit the money in an account for safekeeping. (RR III 112). Both men got into Stewart's car, and she drove back toward the bank. (RR III 113).
>
> The man Stewart had picked up asked Stewart and [Jackson] how he knew he could trust them. (RR III 114). He also said he was afraid a bank would not allow him to withdraw his money because he was African-American. (RR III 115–16). Stewart and [Jackson], also African-Americans, assured the man that he would have no problem withdrawing his money from a bank. (RR III 116). The man told Stewart and [Jackson] that he would match any money they withdrew from their accounts. (RRIII 116–17). [Jackson] asked Stewart to drive him to a grocery store, which contained a branch of his bank, so that he could withdraw some money. (RR III 114). [Jackson] exited the store with an envelope full of cash, which he placed in the console of the car. (RR III 119–21).
>
> Stewart dropped the man off at a McDonald's, while she and [Jackson] went to her bank so that she could withdraw money from her account. (RR III 121). [Jackson's] money remained on the console. (RR III 121–22). Stewart then withdrew $1,100, the money she had saved from her summer job, from her bank account. (RR III 122–23). Stewart had an additional $200 in cash with her, so she placed that money in an envelope with the $1,100 she had withdrawn, in the hopes that she would receive $1,300 from the man. (RR III 117). Stewart went

> back to the McDonald's, the men got back into her car, and she showed them the envelope of money. (RR III 126). [Jackson] picked up his money from the console, and also took Stewart's money. (RR III 126–27). Stewart was supposed to sit in the car and wait for the men to return with the money. (RR III 125). Stewart watched the men walk away and around a building, and then waited about four or five minutes before she realized they were not coming back. (RR III 127). Stewart called her mother, and then called police. (RR III 128–29).
>
> About six weeks after the incident, Stewart positively identified [Jackson] and the other man, Christopher Wayne Russell, from a book of police photos. (RR III 130–37). Russell was charged with theft for his role in the offense, and he pled "guilt." (RR III 84–85). On January 10, 2008, [Jackson] was charged by indictment with felony theft—third offender. (CR 7).

*Jackson v. State*, No. 14-08-00433-CR (Tex. App.—Houston, Apr. 2, 2009) (State's Appellate Brief).[1] The jury found Petitioner guilty, determined the alleged enhancement paragraphs to be "true," and assed a punishment of fifteen years imprisonment. (Docket No. 8-9 at 19.)

On direct appeal, Petitioner complained that the trial judge committed reversible error when she explained felony theft to the jury panel during *voir dire*. The Fourteenth Court of Appeals of Texas rejected this sole point of error and affirmed Respondent's conviction. *Jackson v. State*, No. 14-08-00433-CR (Tex. App.—Houston [14th Dist.] Sept. 10, 2009, no pet.). Petitioner did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

Petitioner sought state habeas relief on each of the grounds presented in his present federal habeas petition. The state district court, sitting as a habeas court, entered written findings and conclusions of law and recommended that Petitioner's state habeas application be denied. (Docket No. 15-8 at 25-27.) The Texas Court of Criminal Appeals denied the application

---

[1] **Error! Main Document Only.**"CR" refers to the Clerk's Record of Petitioner's trial proceeding. "RR" refers to the Report's Record of Petitioner's trial proceeding, preceded by the volume number and followed by the page number(s). "SHCR" refers to Petitioner's state habeas proceeding in *Ex parte Jackson*, No. 12-976-04, followed by the relevant page number(s).

without a written order on the findings of the trial court without a hearing. (http://www.cca.courts.state.tx.us/opinions/Case.asp?FilingID=290824 viewed Mar. 4, 2014.)

Liberally construing Petitioner's pleadings, the Court finds that Petitioner seeks federal habeas relief on the following grounds:

1. He was denied a copy of the indictment prior to trial, in violation of the Texas Constitution.

2. He was denied notice of an amendment to the indictment and the right to respond.

3. He was denied adequate time to prepare a defense after being granted leave to represent himself at trial.

4. He was denied the effective assistance of trial counsel when appointed counsel failed to notify him of the amendment to the indictment.

5. The trial court abused its discretion by denying him a copy of the indictment, denying him adequate time to prepare a defense, and failing to determine whether he was aware of the amendment to the indictment.

6. The prosecutor amended the indictment to add an enhancement paragraph without it being resubmitted to the grand jury, in violation of his due process rights and Fifth Amendment rights.

7. Appellate counsel rendered ineffective assistance by failing to assert on direct appeal each of the previously listed claims.

(Docket No. 1 at 7–8B; Docket No. 2 at 1–14.)

Respondent moves for summary judgment asserting that Petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and that Petitioner's claims fail on the merits. (Docket No. 20.) Petitioner has filed a response in which he essentially recites each of his claims without addressing the arguments raised by Respondent. (Docket No. 23.)

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 787 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions"). The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review. *Renico v. Lett*, – U.S. –, 130 S. Ct. 1855, 1862 (2010) (quotations omitted). Thus, AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Richter*, 131 S. Ct. at 784.

In this case, Petitioner raised each of his present claims in a state habeas application, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court without a hearing. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins*, – U.S. –, 130 S.Ct. 2250, 2258 (2010) (quoting 28 U.S.C. § 2254(d)(1)). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Richter*, 131 S. Ct. at 786 (citation omitted); *see also Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster*, – U.S. –, 131 S. Ct. 1388, 1399 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*, 131 S.Ct. at 1399, 1400. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*, 131 S. Ct. at 1400.

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

III. DISCUSSION

Claim 1: Copy of Indictment

Petitioner contends that he was denied a copy of the indictment in violation of Article 1 Section 10 of the Texas Constitution. (Docket No. 1 at 7.) Petitioner states that shortly after being granted leave to represent himself at trial he was asked by the judge whether he had a copy of the indictment and he stated that he did not. (Id.) Petitioner states that he did not receive a

copy of the indictment until May 12, 2008, after the jury had retired for deliberation on guilt/innocence, at which time Petitioner again asked the prosecuting attorney who provided him with a copy of the amended indictment. (Id.)

As Respondent correctly points out, this claim is not cognizable on federal habeas corpus review because it relies upon an alleged violation of state law. It is well settled that federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see also* 28 U.S.C. § 2254(a) (permitting habeas relief only "on the ground that [a petitioner] is in custody in violation of the Constitution or laws and treaties of the United States"). Although Petitioner vaguely asserts that the Texas Constitution "is cognizable as federal law" (Docket No. 23 at 4), he does not explain how this is relevant to his present claim or offer any legal support for this argument. Thus, Petitioner has not offered any grounds for concluding that the state habeas court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, therefore, this claim is dismissed.

## Claim 2: Notification of Amendment to Indictment

Petitioner asserts that he was not properly notified of the amendment to the indictment or given an opportunity to respond to it. (Docket No. 1 at 7.) The Fifth Circuit has recognized that "[d]ue process requires that a criminal defendant have notice of the charges against him so he can be prepared to defend himself at trial." *Ables v. Scott*, 73 F.3d 591, 593 (5th Cir. 1996). However, Petitioner does not assert that he was unaware of the charges against him, but only that he was denied notice of the proposed amendments to the enhancement paragraphs in the indictment. (Docket No. 2 at 2-3.) Under Texas law, prior convictions which the state plans to use to enhance a defendant's punishment may, but are not required to, be included in the indictment; instead, they may be raised by way of a *Brooks* notice identifying the convictions to

be used for enhancement purposes. *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997)("prior convictions used as enhancements must be pled in some form, but they need not be pled in the indictment--although it is permissible and perhaps preferable to do so").

Here, enhancement paragraphs were pled in the original indictment and later amended with leave of court. At the time the motion for leave to amend was filed, Petitioner was represented by counsel. The Certificate of Service included with the motion shows that a copy of the motion was delivered to Petitioner's counsel. (Docket No. 8-8 at 16.) Although the motion appears to have been granted the same day it was filed and sent to Petitioner's counsel, there is no indication that Petitioner or his counsel ever objected to the amendment or to the granting of the motion. (Id. at 17.) Moreover, while representing himself at trial, Petitioner did not indicate any surprise or raise any objection to the amended enhancement paragraphs and ultimately pleaded "true" to them. (Docket No. 8-15 at 3; 4 RR 5-6.) Finally, even if Petitioner could show that he was denied adequate notice of the amendments under the Texas Code of Criminal Procedure, such a challenge to the application of a state procedural rule would not amount to a cognizable federal habeas corpus claim. *Estelle*, 502 U.S. at 67-68. Thus, because Petitioner cannot show that the state court's denial of this claim on habeas review was contrary to, or involved an unreasonable application of, clearly established Federal law, this claim is dismissed.

Claim 3: Denial of Continuance

Petitioner asserts that the trial court abused its discretion by denying him a continuance after granting his motion to represent himself at trial. "When a denial of a continuance is the basis for a habeas [claim], the petitioner must show an abuse of discretion that was so arbitrary and fundamentally unfair as to violate the constitutional principles of due process. Accordingly,

to prevail, [the petitioner] must show that the failure to grant a continuance harmed the defense." *Newton v. Dretke*, 371 F.3d 250, 255 (5th Cir. 2004) (citation omitted); *Schrader v. Whitley*, 904 F.2d 282, 288 (5th Cir. 1990) ("If abuse of discretion is demonstrated [concerning the denial of a motion for continuance], the [habeas] petitioner must sustain the burden common to due process claims that 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'")

The record shows that Petitioner filed his motion to remove his appointed counsel just nine days before his scheduled trial. (Docket No. 8-8 at 52.) Due to the necessity of providing Petitioner with the required warnings and waivers, the motion was not addressed until the day Petitioner's trial was scheduled to begin. (Id. at 58-59.) Immediately after granting Petitioner's motion to represent himself at trial, the court denied Petitioner's motion for a continuance, stating as follows:

> THE DEFENDANT: Your Honor, could I have adequate enough time to prepare myself for this case?
>
> THE COURT: Sir, I set your case for trial months ago. No, sir. That's denied.
>
> THE DEFENDANT: I just wanted to know because I was going to represent myself and I didn't have time to prepare myself.
>
> THE COURT: Your case has been set for trial.
>
> THE DEFENDANT: Thank you, your Honor.
>
> THE COURT: I want the record to reflect that on February 27, 2008, we set this case for jury trial for today, and it's the policy of this court that whether a defendant comes in with a new attorney or decides to represent himself, that is not a basis for continuance, so that is denied.

(2 RR 22–23.)

The record does not support Petitioner's contention that the trial court abused its discretion by denying a continuance. The quoted colloquy shows that the denial was not

arbitrary, but was based on the trial court's standard policy. Moreover, Petitioner did not offer any specific explanation as to why he required additional time to prepare or how he would be prejudiced if denied a continuance. Petitioner also did not object when his motion for continuance was denied but, instead, appears to have moved forward willingly. Petitioner has also failed to point out any specific instance during the trial in which he was clearly prejudiced by the denial of a continuance. Finally, Petitioner has not offered any basis to conclude that the outcome of his trial would have been different if he had been afforded a continuance. Thus, there is no basis to conclude that the denial of a continuance was fundamentally unfair and Petitioner has not shown that the state court's denial of this claim on habeas review was contrary to, or involved an unreasonable application of, clearly established Federal law. Accordingly, this claim is dismissed.

### Claim 4: Ineffective Assistance of Counsel

Petitioner contends that he was deprived of the reasonably effective assistance of counsel based on counsel's alleged failure to notify Petitioner of the amendment to the indictment. (Docket No. 1 at 7.) The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness. *Ogan*, 297 F.3d at 360. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993). Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90. A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

Here, Petitioner has not shown that his trial counsel's performance was deficient based on the alleged failure to notify Petitioner of, or object to, the amendment to the indictment. As an initial matter, Petitioner offers no support for his contention that his attorney should have

conferred with him regarding whether to object to the motion to amend the indictment. Such decisions are routinely left to the discretion of counsel. More importantly, Petitioner has not shown that there was any valid basis for objecting to the amendment, which merely substituted a different prior conviction in an existing enhancement paragraph. Because Petitioner has not shown that there was any meritorious objection to make, he cannot fault the decision not to raise an objection. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Turning to the second prong of the *Strickland* test, Petitioner has not shown that he was prejudiced by counsel's failure to object to the amendment of the indictment. The record shows that following Petitioner's request to represent himself at trial, it was clearly explained to Petitioner, and Petitioner acknowledged, that he faced an enhanced punishment range if the state proved the two prior felonies alleged in the amended indictment. (4 RR 6-7.) This acknowledgement directly refutes Petitioner's claim that he was unaware of the possible effect of the amended enhancements when he opted to represent himself. Thus, Petitioner has not shown a reasonable probability that, but for counsel's alleged error, the result of his criminal proceedings would have been different.

In sum, Petitioner has not shown that the state habeas court's ruling on this claim was unreasonable under AEDPA standards, therefore, this claim is dismissed.

### Claim 5: Trial Court Errors

In his fifth ground for relief Petitioner asserts that the trial court abused its discretion by denying him a copy of the indictment, denying him adequate time to prepare a defense, and failing to determine whether he was aware of the amendment to the indictment. (Docket No. 1 at 9.) These assertions are merely a rehash of the grounds asserted in claims one through three

above. As previously discussed, none of these grounds have merit and Petitioner has not shown that the state habeas court's rejection of these claims was contrary to, or involved an unreasonable application of, clearly established Federal law. Therefore, this claim is dismissed.

### Claim 6: Invalid Indictment

Petitioner asserts that the amended indictment was invalid because it was not resubmitted to the grand jury after the motion to amend the enhancement paragraphs was granted. (Docket No. 1 at 9.) As previously discussed, under Texas law, there is no requirement that enhancement paragraphs be pled in an indictment. *Brooks*, 957 S.W.2d at 34. Moreover, the United States Constitution does not require that a state felony offense be charged by a grand jury. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). Thus, Petitioner cannot show that he was denied due process under the Fourteenth Amendment based on the failure to resubmit the amended indictment to the grand jury. Nor has he shown that the state habeas court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established Federal law. Thus, this claim is dismissed.

### Claim 7: Ineffective Assistance of Appellate Counsel

Lastly, Petitioner asserts that his appellate counsel rendered ineffective assistance by failing to raise on direct appeal each of the claims presented here. (Docket No. 1 at 9-10.) The Sixth Amendment does not require appellate counsel to raise every non-frivolous claim available on appeal, since counsel's effort to serve his client to the best of his professional ability will often depend on strategic choices about which claims to pursue on appeal. *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983). However, the Supreme Court has indicated that, while difficult, it is possible to make out a claim for ineffective assistance of counsel based on defense counsel's failure to raise certain issues on appeal. *Smith v. Robbins,* 528 U.S. 259, 288 (2000)

("Notwithstanding *Barnes,* it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."). In *Smith,* the Supreme Court identified, as an example supporting this statement, the Seventh Circuit case of *Gray v. Greer,* 800 F.2d 644 (7th Cir. 1986), in which that court stated that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith,* 528 U.S. at 288 (quoting *Gray,* 800 F.2d at 646). In *Gray,* the Seventh Circuit further held that if appellate counsel "failed to raise a significant and obvious issue, the failure could be viewed as deficient performance" and that if the issue that was not raised "may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial." *Gray,* 800 F.2d at 646.

In addition to deficient performance, to prevail on an ineffective-assistance-of-appellate-counsel claim, a petitioner must also show prejudice, which the Supreme Court has defined as "a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal." *Robbins,* 528 U.S. at 285; *see also Moreno v. Dretke,* 450 F.3d 158, 168 (5th Cir. 2006) ("When the petitioner challenges the performance of his appellate counsel, he must show that with effective counsel, there was a reasonable probability that he would have won on appeal."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland,* 466 U.S. at 694. This requires a "'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster,* 131 S. Ct. at 1403 (quoting *Harrington v. Richter,* 562 U.S. ——, ——, 131 S. Ct. 770, 777 (2011)).

Here, Petitioner has not shown that any claim raised in his present habeas petition is stronger than the jury-venire-instruction issue raised on direct appeal. In fact, as discussed above, each of Petitioner's present claims is meritless. Petitioner has not offered sufficient

grounds to overcome the strong presumption that his appellate counsel rendered adequate assistance by exercising reasonable professional judgment in deciding which issues to raise on appeal. *See Strickland*, 466 U.S. at 689. Moreover, Petitioner has not shown a reasonable probability that with more effective appellate counsel he would have prevailed on appeal. Thus, Petitioner has not met his burden of showing that the state habeas court's rejection of Petitioner's ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, clearly established Federal law.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The Court has determined that Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## V. ORDER

Finding no unreasonable application of clearly established federal law in the record of the state proceedings, the Court ORDERS the following:

1. Respondent's Supplemental Motion for Summary Judgment (Docket No. 20) is GRANTED.

2. A certificate of appealability is DENIED.

3. This habeas action is DISMISSED WITH PREJUDICE.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 13th day of March, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE